UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HUNTER LAMBIRTH and RACHAEL LAMBIRTH, husband and wife,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY, BUSINESS ENTITY DOES I through X, and DOES I through X,<br><br>　　　　　　Defendant. | Case No. 1:20-cv-00193-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case involves a dispute over the adjustment and payment of a claim for benefits brought under a homeowners insurance policy issued by USAA Casualty Insurance Company (USAA CIC) on the rental property of Plaintiffs, Hunter and Rachel Lambirth. Presently before the Court are Plaintiffs' motion to amend the complaint to add a claim for punitive damages (Dkt. 58, 80), and Defendant's motion for summary judgment (Dkt. 72). The motions are fully briefed and a hearing was conducted on March 13, 2023. After careful consideration of the record, the parties' briefing and supporting materials, and oral argument, the Court will grant in part and deny in the motion for summary judgment. The Court will deny the motion to add a claim for punitive damages.

**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL BACKGROUND[1]

Plaintiffs are the named policyholders on the insurance policy (the Policy) issued by USAA CIC for their rental property located in Cascade, Idaho, effective from March 2, 2018 through March 2, 2019. (Dkt. 72-3, Dec. Boyle, Ex. A.) The Policy provided a $175,000 coverage limit with a $1,000 deductible, and covered loss of rent for a period of twelve-months in the event the home was uninhabitable. (Dkt. 72-2, SUDF at ¶ 3); (Dkt. 72-3, Dec. Boyle, Ex. A.)

On February 18, 2019, pipes at the property froze and burst, resulting in damage to the interior of the property. (Dkt. 4-2 at ¶ 5.) The same day, Plaintiffs hired Restoration North to mitigate the damage. (Dkt. 78, SOF at ¶ 4.) On February 19, 2019, Plaintiffs notified USAA CIC of the incident and filed a claim under the Policy. USAA CIC senior property adjuster Becki Boyle was assigned to adjust the claim.

On February 25, 2019, Plaintiffs advised USAA CIC that the home was uninhabitable, their renter was unable to reside in the home, and they were incurring additional utility expenses due to the loss. (Dkt. 4-2 at ¶¶ 9-11); (Dkt. 72-3, Dec. Boyle at ¶¶ 4, 7.) At the time of the loss, the home was being rented for $950.00 per month. (Dkt. 4-2 at ¶ 10); (Dkt. 72-2, SUDF at ¶ 4.) The lost rent amount increased in September 2019, due to an increase in Plaintiffs' mortgage. (Dkt. 4-2 at ¶¶ 37, 39); (Dkt. 72-2, SUDF at ¶ 38); (Dkt. 72-3, Dec. Boyle at ¶¶ 46, 51.) USAA CIC paid Plaintiffs for twelve months

---

[1] The facts stated herein are undisputed unless otherwise specified.

**MEMORANDUM DECISION AND ORDER - 2**

of lost rent for the months of February 2019 through February 2020.[2] While Plaintiffs do not dispute the amounts of lost rent paid by USAA CIC, Plaintiffs allege some of the lost rent payments were untimely resulting in late charges from Plaintiffs' lender. (Dkt. 78, SOF at ¶ 18.)

The parties disagree concerning the handling and resolution of the Policy claim as to the construction rebuild cost and the asbestos mitigation cost. From February 2019 to July 2019, the parties exchanged a number of communications and estimates attempting to adjust the claim as to construction and asbestos mitigation costs. The parties dispute the cause of the delay in resolving the Policy claim during the adjustment process.

On February 25, 2019, USAA CIC retained independent adjuster - Larry Oletski of David Morse and Associates (DMA) - to conduct an inspection of the property and provide a repair estimate. (Dkt. 72-2, SUDF at ¶ 6); (Dkt. 78, SOF at ¶ 8.)

Oletski inspected the property on March 1, 2019 and provided an estimate dated March 9, 2019 (DMA Initial Estimate) of $18,380.45 for replacement cost value (RCV), and $15,059.77 for actual cash value (ACV), with the net claim totaling $14,059.77 after the $1,000 deductible. (Dkt. 72-3, Dec. Boyle, Ex. C.) The DMA Initial Estimate was for construction costs only. It did not include any costs associated with asbestos abatement or

---

[2] USAA CIC issued monthly payments for lost rent in the amount of $950.00 from February 2019 through November 2019. (Dkt. 72-2, SUDF at ¶ 37); (Dkt. 78, SOF at ¶¶ 7, 14, 18, 21, 36, 45, 46, 48.) On December 16, 2019, USAA CIC issued a payment for lost rent in the amount of $1,412.40, to account for the increased monthly mortgage payment as of September 18, 2019 through January 2020. (Dkt. 72-2, SUDF at ¶ 38); (Dkt. 78, SOF at ¶ 50.) On February 10, 2020, USAA CIC issued the final lost rent payment under the Policy in the amount of $1,065.00. (Dkt. 72-2, SUDF at ¶ 39.) The total amount of lost rent payments made was $11,977.40. (Dkt. 72-2, SUDF at ¶ 39.)

mitigation. (Dkt. 69, Boyle Depo. at p. 43:1-5.) Oletski supplemented the estimate to clarify that the $10,000 Policy limit did not apply to the loss. (Dkt. 72-3, Dec. Boyle, Ex. D.)

Based on the DMA Initial estimate, on March 12, 2019, USAA CIC issued a check in the amount of $14,059.77. (Dkt. 69, Ex. 7); (Dkt. 78, SOF at ¶ 12.)[3] On May 28, 2019, Plaintiffs notified Boyle that they had not cashed the check and that a new lender owned the mortgage on the property, making the check nonnegotiable because it named the prior lender as payee. (Dkt. 78, SOF at ¶¶ 12, 19.) Boyle advised Mr. Lambirth that USAA CIC could stop payment and reissue a new check once the parties knew the settlement amount and correct mortgage company. (Dkt. 72-2, SUDF at ¶ 18.) Plaintiffs provided the new lender's information to USAA CIC on June 11, 2019. No new check was issued. On August 28, 2019, Boyle asked Mr. Lambirth about the outstanding March 12, 2019 check, and he told Boyle to void the check as he had already shredded it. (Dkt. 72-2, SUDF at ¶ 31.)

On April 4, 2019, Plaintiffs submitted an invoice from P & B Drain Cleaning and Septic Services in the amount of $3,185.00, which USAA CIC paid in full the next day. (Dkt. 72-2, SUDF at ¶ 12.) Plaintiffs did not dispute this payment.

---

[3] There is some dispute or discrepancy concerning to whom the March 12, 2019 check was issued. Plaintiffs argue the check included the "wrong mortgage company as payee." (Dkt. 78, SOF at ¶ 12); (Dkt. 69, Ex. 7 at 116.) However, the Complaint alleges the check was issued "to the Plaintiffs." (Dkt. 4-2 at ¶ 15.) USAA CIC asserts the check was issued "the Lambirths." (Dkt. 72-3, Dec. Boyle at ¶ 11.)

MEMORANDUM DECISION AND ORDER  - 4

Restoration North informed USAA CIC on April 10, 2019 that the property contained asbestos. (Dkt. 69, Boyle Depo. at 48:11-17; 49:3-5); (Dkt. 72-2, SUDF at ¶ 11); (Dkt. 78, SOF at ¶ 14.) On May 17, 2019, Restoration North emailed USAA CIC an estimate to remediate the asbestos in the amount of $81,328.54 (Restoration North Estimate). (Dkt. 69, Ex. 11); (Dkt. 72-2, SUDF at ¶ 14); (Dkt. 78, SOF at ¶ 17.) The estimate did not include construction repair costs. (Dkt. 72-2, SUDF at ¶¶ 15-16); (Dkt. 78, SOF at ¶ 17.)

The parties disagree concerning the estimates submitted by DMA and Restoration North. USAA CIC contends the bids provided "disparate estimates," based upon Boyle's initial belief that the Restoration North Estimate included construction repair costs as well as asbestos mitigation, which prompted USAA CIC to re-inspect the property. (Dkt. 72-2, SUDF at ¶ 15.) Plaintiffs, on the other hand, argue the bids were not "disparate" as they were for two different costs – asbestos abatement in Restoration North's Estimate and construction rebuild in the DMA Initial Estimate. (Dkt. 78, SOF at ¶ 17.) Thus, Plaintiffs argue the Restoration North Estimate was undisputed at that time.

On May 28, 2019, Boyle was informed by Oletski that the Restoration North Estimate was for asbestos abatement and mitigation only, not construction costs. (Dkt. 72-2, SUDF at ¶ 16.) The property was reinspected on May 31, 2019 by both Oletski and Restoration North, with both concluding asbestos abatement was necessary. (Dkt. 72-2, SUDF at ¶ 19); (Dkt. 78, SOF at ¶ 28.) On June 12, 2019, Oletski provided a revised repair estimate of $20,673.48 ACV less deductible, and $26,658.13 if depreciation is

recovered (DMA Revised Estimate). (Dkt. 72-2, SUDF at ¶¶ 21-23); (Dkt. 78, SOF at ¶ 28.) The DMA Revised Estimate again did not include asbestos mitigation.

Also on June 12, 2019, USAA CIC contacted Disaster Pro to obtain a second opinion regarding asbestos mitigation. On July 30, 2019, Disaster Pro provided USAA CIC with an estimate for asbestos abatement in the amount of $37,762.18 RCV (Disaster Pro Estimate). (Dkt. 72-2, SUDF at ¶ 28); (Dkt. 78, SOF at ¶ 39.) Plaintiffs contend the Disaster Pro Estimate was never provided to them and the bid amount was never tendered despite being undisputed. (Dkt. 78, SOF at ¶¶ 40-41.) USAA CIC asserts it did not provide the Disaster Pro Estimate to Plaintiffs or tender payment in the amount of the estimate because Plaintiffs initiated the appraisal process the day before USAA CIC received the Disaster Pro Estimate. (Dkt. 72-2, SUDF at ¶ 29.)

On this point, USAA CIC contends that Mr. Lambirth submitted a written appraisal demand notification to USAA CIC on July 29, 2019, via an email message. (Dkt. 72-3, Dec. Boyle, Ex. P.) Plaintiffs do not contest that they requested the appraisal process or that the appraisal process commenced by at least the end of July 2019. (Dkt. 77 at 11) ("[Plaintiffs] repeatedly demanded appraisal. USAA refused to participate."); (Dkt. 78, SOF at ¶ 38) ("Rather than accept and approve Restoration North's estimate, for which USAA had no contradicting information, USAA stated it would select JS Held as its appraiser and would accept the appraisal request previously made….").[4]

_____

[4] The timing of the request for and initiation of the appraisal process was previously a source of disagreement between the parties. (Dkt. 22 at 2, n. 1.) However, in the briefing and materials submitted with the present motions, Plaintiffs contend they "repeatedly" demanded an appraisal, beginning with Restoration North's email to USAA CIC on May 14, 2019 demanding an

On July 30, 2019, Boyle contacted J.S. Held to retain an appraiser, and ultimately hired Joe Kirsten of J.S. Held as USAA CIC's appraiser. (Dkt. 72-3, Dec. Boyle at ¶ 37.) In mid-October or early November, Kirsten advised Boyle that an appraisal umpire was needed and that Plaintiffs' chosen appraiser had been replaced by Shane Monday. (Dkt. 72-2, SUDF at ¶ 32); (Dkt. 78, SOF at ¶ 47.) Kirsten later advised Boyle that Monday had not been responsive. (Dkt. 72-3, Dec. Boyle at ¶ 44.)

On December 19, 2019, Kirsten provided a proposed appraisal award (JS Held Appraisal) to Monday and to USAA CIC, as later amended, as follows:

| | |
|---|---|
| Mitigation: | $49,598.60 |
| Dwelling Repairs: | $26,169.65 |
| Total: | $76,768.25 (RCV) |

(Dkt. 72-3, Dec. Boyle, at ¶¶ 47-48,  Ex. U); (Dkt. 72-2, SUDF at ¶¶ 33-34); (Dkt. 78, SOF at ¶ 51.) In early January of 2020, Kirsten advised USAA CIC that Monday had recused himself without proposing an appraisal award. (Dkt. 72-3, Dec. Boyle at ¶ 48, Ex. V.)

On January 7, 2020, Boyle provided the JS Held Appraisal to Plaintiffs and asked if Plaintiffs would agree to settle the claim for the amount of the asbestos mitigation in the appraisal ($49,598.60) and the construction repair costs as estimated by the adjuster from DMA ($27,658.13), or if Plaintiffs would be assigning a new appraiser. (Dkt. 72-2,

---

appraisal. (Dkt. 77 at 11); (Dkt. 78, SOF at ¶ 16.) Thus, Plaintiffs do not now contest that they requested an appraisal or that the appraisal process began in late July 2019. In her deposition, Boyle acknowledged Restoration North's email, but testified that "the contractor does not have the right to request appraisal process on the insured policy." (Dkt. 69, Dec. Boyle at 51:22-24; 72:9-11.) USAA CIC argues it immediately sought to retain an appraiser once Mr. Lambirth demanded an appraisal on July 29, 2019. (Dkt. 81 at 4, n. 2.)

SUDF at ¶ 35) (Dkt. 78, SOF at ¶ 52.) Plaintiffs responded that they would need time to review the estimate and determine how they would proceed. Thereafter, Plaintiffs filed this lawsuit against USAA CIC by way of a complaint dated February 26, 2020, and served upon USAA CIC on March 30, 2020. (Dkt. 1-1, 4-2.)

## PROCEDURAL BACKGROUND

The complaint alleges claims for breach of contract, bad faith, and intentional infliction of emotional distress. (Dkt. 4-2.)[5] USAA CIC filed a motion to stay and to compel appraisal, which the Court granted on February 4, 2021. (Dkt. 15, 22.) During the stay, the parties pursued mediation and Plaintiffs filed a motion for reconsideration. (Dkt. 24, 25.)

Following an unsuccessful attempt at mediation, the Court denied Plaintiffs' motion for reconsideration and ordered the parties to take all necessary steps to complete the appraisal process by September 17, 2021. (Dkt. 31.) The deadline for completing the appraisal process was extended several times upon stipulations filed by the parties. (Dkt. 32-39.) On February 22, 2022, a neutral umpire completed an appraisal award valuing Plaintiffs' total loss at $126,895.55. (Dkt. 72-2, SUDF at ¶ 43); (Dkt. 78, SOF at ¶ 63.) On March 18, 2022, USAA CIC issued a check for $125,895.55, comprised of the full amount of the appraisal award less the $1,000.00 deductible. (Dkt. 72-2, SUDF at ¶ 44.)[6]

---

[5] The complaint was initially filed in state court and, thereafter, properly removed pursuant to 28 U.S.C. § 1332. (Dkts. 1, 4.) All parties have consented to proceeding before a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. 9.)

[6] The appraisal award check was made payable to Hunter Lambirth, Rachael Lambirth, and PennyMac Loan Services, LLC, the mortgagee of the property. (Dkt. 72-2, SUDF at ¶ 45.) There

**MEMORANDUM DECISION AND ORDER - 8**

Upon the request and agreement of the parties, the stay in this matter was lifted and new case management deadlines were entered. (Dkt. 40, 42, 45.) On November 10, 2022, Plaintiffs filed a motion to amend complaint to include a claim for punitive damages. (Dkt. 59.)[7] On November 23, 2022, Defendant filed a motion for summary judgment. (Dkt. 72.) The Court makes the following determinations.

## STANDARDS OF LAW

This case is before the Court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332. (Dkt. 1.) "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

### 1. Summary Judgment

"The 'procedural aspects of summary judgment' are governed by the Federal Rules of Civil Procedure, and 'the law of the forum controls the substantive issues.'" *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015) (quoting *Caesar Elecs., Inc. v. Andrews*, 905 F.2d 287, 290 n. 3 (9th Cir. 1990)). Summary judgment is appropriate where a party demonstrates that, as to any claim or defense,

---

is a separate ongoing lawsuit between the Lambirths and PennyMac Loan Services, LLC regarding the proceeds of the check. *See Lambirth, et al. v. PennyMac Loan Services, LLC*, 1:22-CV-00494-DKG (D. Idaho filed Dec. 6, 2022).

[7] On December 20, 2022, Plaintiffs filed an amended motion to amend complaint to include as an attachment the proposed amended pleading containing the claim for punitive damages. (Dkt. 80.) Plaintiffs also filed an Amended Declaration of Hunter Lambirth with attachments Exhibits A-D in support of their motion to amend, as the Exhibits were omitted from the originally filed declaration. (Dkt. 60, 76.) The amendments were filed solely to correct the record, and do not change the bases underlying the request to add a claim for punitive damages. (Dkt. 80, 85.)

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### 2.  Claim for Punitive Damages

A punitive damages claim is substantive in nature and accordingly controlled by Idaho law in diversity cases. *See Strong v. Unumprovident Corp.*, 393 F.Supp.2d. 1012, 1025 (D. Idaho 2005). Idaho Code Section 6-1604(2) provides that, after an appropriate pretrial motion and a hearing, the court shall allow a party to amend the pleadings "if, after weighing the evidence presented, the court concludes that, the moving party has

established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." Idaho Code § 6-1604(2).

## ANALYSIS

USAA CIC moves for summary judgment on all of Plaintiffs' claims – breach of contract, bad faith, and intentional infliction of emotional distress. (Dkt. 72.) Plaintiffs oppose USAA CIC's motion and further move to amend the complaint to add a claim for punitive damages. (Dkt. 58, 80.) The Court will address each motion in turn, beginning with the motion for summary judgment.

**1.      Motion for Summary Judgment**

**A.      Breach of Contract Claim**

In Idaho, "[t]he elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013). The parties here dispute the second and third elements.

USAA CIC argues the breach of contract claim fails as a matter of law because it complied with the plain, unambiguous terms of the Policy. (Dkt. 72, 81.) Specifically, USAA CIC points to the Appraisal and Loss Payment provisions of the Policy, which state:

**6.      Appraisal.**
a.      If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser withing 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of

record in the state where the **"described location"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

10.  **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:
   a.  We reach an agreement with you;
   b.  There is an entry of a final judgment; or
   c.  There is a filing of an appraisal award with us.

(Dkt. 72-3, Dec. Boyle, Ex. A at 25, 40-41) (emphasis in original). USAA CIC maintains it fulfilled its contractual obligations by issuing payments for twelve months of lost rent and the septic invoice, and timely paying the appraisal award, all totaling $141,057.95. Thus, USAA CIC contends, there was no breach of the insurance contract and no resulting contract damages to Plaintiffs.

Plaintiffs, on the other hand, assert that payment of the appraisal award does not vitiate the breach of contract claim. (Dkt. 77 at 4-5.) Instead, Plaintiffs maintain that USAA CIC breached the Policy by failing to timely pay undisputed amounts due on the first party claim, and delaying investigation and valuation of the claim. (Dkt. 77 at 12-13.) Further, Plaintiffs argue that USAA CIC's interpretations of the contract's appraisal clause and when payment is owed, are contrary to public policy and, therefore, void and unenforceable. (Dkt. 77 at 6.)

For the reasons that follow, the Court finds a genuine issue of material fact has been shown on the element of breach, but that summary judgment is appropriate on this

**MEMORANDUM DECISION AND ORDER - 12**

claim because Plaintiffs have not identified any damages due under the contract were caused by any breach.

### i.    Breach Element

Plaintiffs claim USAA CIC breached the terms of the Policy by failing to timely pay undisputed amounts as they became due, such as: lost rent each month, reissuing the March 12, 2019 check, and the amounts of the estimates from USAA CIC's own inspectors for construction costs and mitigation costs in June and July of 2019. Further, Plaintiffs argue USAA CIC breached the contract by delaying investigation and valuation of the asbestos mitigation, and failing to provide the Disaster Pro estimate to Plaintiffs. (Dkt. 77 at 12-13.)[8] In reply, USAA CIC contends Plaintiffs' arguments seek to impermissibly expand the claim by raising new allegations of breach and, regardless, summary judgment is appropriate because no breach occurred. (Dkt. 81 at 2-9.)

As an initial matter, the Court respectfully disagrees with USAA CIC's position concerning the scope of the claim. The Complaint alleges "USAA [CIC]'s failure or refusal to pay benefits under the policy was unjustified and amounted to a breach of contract." (Dkt. 4-2 at ¶ 46.) Although broad, the allegations in the Complaint are sufficient to state a claim for breach of contract based on USAA CIC's failure to timely

---

[8] Plaintiffs also refer to unpaid attorney fees and pre-judgment interest as bases for the breach of contract claim. (Dkt. 77 at 14.) However, Plaintiffs have not identified any term or provision of the contract allowing for such damages that USAA CIC is alleged to have breached. Indeed, these do not appear to be contractual damages as they do not arise from the contract itself. Rather, any right to an award of attorney fees or pre-judgment interest appears to be statutorily based. Thus, the possibility of an award of attorney fees or pre-judgement interest were Plaintiffs to prevail, does not demonstrate the existence of a genuine issue of material fact on their breach of contract claim for purposes of this motion for summary judgment.

**MEMORANDUM DECISION AND ORDER  - 13**

pay allegedly undisputed amounts, and delay in investigating and processing the claim prior to the appraisal process. (Dkt. 4-2 at ¶¶ 21, 23, 28-29, 33, 38, 40.) Turning to the merits of the motion and the breach of contract claim, the Court finds genuine issues of material fact exist as to the element of breach.

The parties disagree over the interpretation and application of the "Loss Payment" clause. Specifically, the three payment triggering events – an agreement, entry of a final judgment, or filing of an appraisal award.

As to the first event, Plaintiffs argue the term "agreement" is ambiguous and must be resolved in favor of the insured. (Dkt. 77 at 8-9.) To that end, Plaintiffs contend they reached agreement with USAA CIC to pay for lost rent, the septic bill, and the appraisal award, all of which were paid. In addition, Plaintiffs argue they reached agreement with USAA CIC to pay the undisputed estimates for construction costs of $27,658.13 (DMA Revised Estimate) and asbestos abatement of $37,762.00 (Disaster Pro Estimate), neither of which were paid in breach of the Policy. Thus, Plaintiffs argue, the first payment triggering event in the Loss Payment provision of the Policy occurred, yet USAA CIC failed to timely pay the undisputed amounts. As to the second and third events – entry of a final judgment or filing of an appraisal award – Plaintiffs argue that insureds cannot be forced to sue for benefits or obtain an appraisal in order to receive coverage benefits under Idaho law. (Dkt. 77 at 9-12.)

USAA CIC argues no breach of has been shown because the Loss Payment provision of the Policy was not triggered until the appraisal award was issued, which was

**MEMORANDUM DECISION AND ORDER - 14**

timely paid. (Dkt. 81.) Further, USAA CIC maintains the terms of the Policy are
unambiguous, valid, and enforceable.

Plaintiffs contend that USAA CIC's interpretations of the Appraisal and the Loss
Payment contract provisions of the Policy violate Idaho law and public policy. (Dkt. 77 at
6-8.) Specifically, Plaintiffs contend that Idaho law and public policy require an insurer
to timely pay the undisputed amounts of a first-party claim. The Court previously
disagreed with Plaintiffs' public policy arguments when ruling on the motion to compel
appraisal. (Dkt. 22 at 7-8.) Having again considered Plaintiffs' arguments, the Court finds
the terms of the contract are unambiguous and do not violate public policy.

Whether an insurance contract violates public policy is a question of law for the
Court to resolve. *Neustadt v. Colafranceschi*, 469 P.3d 1, 8 (Idaho 2020). "The 'liberty of
contract is not an absolute and unlimited right, but upon the contrary is always
subservient to the public welfare.'" *Id.* (quoting *Hill v. Am. Family Mut. Ins. Co.*, 249
P.3d 812, 816 (Idaho 2011)). "[C]ourts will not hesitate to declare void as against public
policy contractual provisions which clearly tend to the injury of the public in some way."
*Id.* (quoting 17A C.J.S. Contracts § 218 (2010)). The Idaho Supreme Court has
articulated the test as follows:

> "The usual test applied by courts in determining whether a contract offends
> public policy and is antagonistic to the public interest is whether the
> contract has a <u>tendency</u> toward such an evil." *Stearns v. Williams*, 240 P.2d
> 833, 837 (Idaho 1952) (emphasis added). "Public policy may be found and
> set forth in the statutes, judicial decisions or the constitution." *Bakker v.
> Thunder Spring-Wareham, L.L.C.*, 108 P.3d 332, 336 (Idaho 2005).
> Whether an insurance contract is against public policy "is to be determined
> from all the facts and circumstances of each case." *Foremost Ins. Co. v.
> Putzier*, 606 P.2d 987, 991 (Idaho 1980). In addition, "analogous cases

**MEMORANDUM DECISION AND ORDER - 15**

involving the same general principles may be looked to by the court in arriving at a satisfactory conclusion." *Smith v. Idaho Hosp. Serv.*, 406 P.2d 696, 699 (Idaho 1965).

*Neustadt*, 469 P.3d at 8 (quoting *Hill*, 249 P.3d at 816). The statutes and cases cited by Plaintiff here do not establish the invalidity of the challenged Policy provisions based on public policy.

Idaho Code Section 41-1302 governs unfair or deceptive trade practices in insurance. While the statute identifies unfair insurance claim settlement practices, it does not give rise to a private right of action. Idaho Code § 41-1329. Rather, in Idaho an insured can bring a tort cause of action for bad faith, as Plaintiffs have done here. *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1016 (Idaho 1986). Further, there is nothing about the language of the Appraisal or Loss Payment clauses or USAA CIC's interpretation of them, that runs afoul of the policy underlying the statute. Similarly, the cases relied on by Plaintiffs - *Eastman v. Farmers Ins. Co.*, 423 P.3d 431 (Idaho 2018) and *Pena v. Viking Ins. Co.*, 503 P.3d 201 (Idaho 2021) - both address the public safety policy concerns underlying underinsured motorist coverage. Here, however, the contract at issue is a homeowner's insurance policy for a rental property, which does not raise the same policy concerns as underinsured motorist coverage. Thus, the policy reasons at issue in the cases cited by Plaintiffs are not present here.

Next, the Court finds Plaintiffs have established a genuine issue of material fact as to whether a breach occurred. For instance, there is evidence upon which a jury could find that USAA CIC violated the agreement provision of the Loss Payments clause by failing to issue undisputed payments. Namely, by failing to reissue the March 12, 2019

**MEMORANDUM DECISION AND ORDER - 16**

check after Plaintiffs provided the updated mortgage information. Boyle testified that she knew the initial estimate amount was owed to Plaintiffs, but that USAA CIC never reissued the check. (Dkt. 69, Boyle Depo. at 61:12-23, 70:10-71:2.) This evidence gives rise to a question of fact as to whether an agreement had been reached as to the amount of the March 12, 2019 check, which triggered the Loss Payment provision of the Policy. Boyle's testimony that the amount of the initial estimate was owed but not paid, is evidence upon which a jury could find that USAA CIC's failure to reissue the check within sixty days of receiving the updated lender information was a breach of the Policy.

Further, a genuine issue of material fact exists as to whether USAA CIC breached the Policy by delaying investigation and valuation of the mitigation cost after being made aware that the home contained asbestos. Plaintiffs point to an email from Restoration North to Boyle on April 10, 2019 informing Boyle that the property contained asbestos and it would take several months to repair, and that Restoration North provided an estimate for asbestos mitigation to Boyle on May 17, 2019. (Dkt. 78, SOF at ¶¶ 13-15.) Despite being told about the asbestos in April and receiving Restoration North's estimate in May, Boyle did not request an estimate for asbestos mitigation from Disaster Pro until June 12, 2019. USAA CIC, on the other hand, cites Boyle's testimony that she was initially unaware that the estimates from DMA did not include asbestos mitigation and that Restoration North's estimate was for only asbestos mitigation. (Dkt. 72-2, SUDF at ¶¶ 15-16.) After discovering the estimates did not contain the costs for both construction repair and asbestos abatement, USAA CIC asserts, the property was reinspected and Boyle obtained an second estimate for asbestos abatement from Disaster Pro. (Dkt. 72-2,

MEMORANDUM DECISION AND ORDER  - 17

SUDF at ¶¶ 19, 22, 25.) This evidence, the Court finds, gives rise to genuine issues of material fact concerning whether USAA CIC breached the Policy by delaying investigation of the cost to mitigate the asbestos and, further, by denying payment of the claim based on the false belief that the initial DMA Estimate ($14,059.77) and the Restoration North Estimate ($81,328.54) included both construction costs and asbestos abatement, when in fact they did not.

There is also conflicting evidence upon which a jury could find in favor of either party concerning whether USAA CIC's failure to provide the Disaster Pro bid to Plaintiffs was a breach of the Policy. Namely, Boyle's testimony that Plaintiffs were entitled to the bid and had asked for the bid, but that it was not provided because the appraisal process had begun. (Dkt. 69, Boyle Depo. at 83:16-19.)

Finally, it is undisputed that USAA CIC timely paid the appraisal award and, therefore, did not breach the contract in this regard. Thus, the breach of contract claim cannot be based on any failure to timely pay the appraisal award. However, payment of the appraisal award does not, as a matter of law, cure any other conduct by USAA CIC that constituted a breach of Policy. *Harman v. State Farm Mut. Auto. Ins. Co.*, 394 P.3d 796, 803-804 (Idaho 2017). Thus, because Plaintiffs have established the existence of genuine issues of material fact upon which a jury could conclude that USAA CIC breached the contract, unrelated to the payment of the appraisal award, summary judgment is precluded on this basis.

### ii.    Damages Element

USAA CIC maintains it has satisfied its contractual monetary obligation to the Plaintiffs and, therefore, Plaintiffs cannot prove they suffered any contractual damages as a result of any breach of the Policy. (Dkt. 81 at 2-3.)

"Damages recoverable for breach of contract are those that arise naturally from the breach and are reasonably foreseeable…by the parties at the time they contracted." *Silver Creek Computers, Inc. v. Petra, Inc.*, 42 P.3d 672, 676-678 (Idaho 2002) (quoting *Appel v. LePage*, 15 P.3d 1141 (Idaho 2000)). "A nonbreaching party may recover damages so long as the damages are 'incidental to the contract and [ ] caused by its breach ....'" *Caldwell Land and Cattle, LLC v. Johnson Thermal Systems, Inc.*, 452 P.3d 809, 829 (Idaho 2019) (quoting *Suitts v. First Sec. Bank of Idaho, N.A.*, 713 P.2d 1374, 1381 (Idaho 1985)). "Direct damages are always recoverable, and consequential losses must be compensated if it can be determined that the parties contracted with them in view." *Id.*; *Silver Creek Computers*, 42 P.3d at 678 ("Consequential damages are not recoverable unless specifically within the contemplation of the parties at time of contracting.").

Here, Plaintiffs have not identified any direct contractual damages that they suffered as a result of any of the alleged breaches of the Policy, which have not been satisfied the payments made by USAA CIC. Nor have Plaintiffs pointed to evidence demonstrating the non-direct damages claimed were consequential losses and, therefore, recoverable under the breach of contract claim. *See Garcia v. Absolute Bail Bonds, LLC*, 389 P.3d 161, 167 (Idaho 2016) (Plaintiffs have the burden of showing the claimed

consequential damages were reasonably foreseeable, within the contemplation of the

parties at the time of contracting, and were caused by the breach of contract.).

Rather, the damages alleged – late fees, loss of renter, inability to use the property,

forbearance of their mortgage, and family loans – are damages that may be recoverable in

tort. "[W]here an insurer 'intentionally and unreasonably denies or delays payment' on a

claim, and in the process harms the claimant in such a way not fully compensable at

contract, the claimant can bring an action in tort to recover for the harm done." *White*,

730 P.2d at 1018 (footnote omitted). Indeed, Plaintiffs conceded as much during the

hearing at least as to damages related to the payments for lost rent. Plaintiffs have

therefore not established the existence of an essential element of their claim – that a

breach of the Policy caused damages. Accordingly, the motion for summary judgment

will be granted on the breach of contract claim.

### B.    Insurance Bad Faith Claim

For a first-party insured to recover on a bad faith claim under Idaho law, the

insured must show: 1) the insurer intentionally and unreasonably denied or withheld

payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the

result of a good faith mistake; and 4) the resulting harm is not fully compensable by

contract damages. *Parks v. Safeco Ins. Co. of Illinois*, 376 P.3d 760, 766 (Idaho 2016).

"Fundamental to the claim of bad faith is the idea that there must be coverage of the

claim under the policy." *ABK, LLC v. Mid-Century Ins. Co.*, 454 P.3d 1175, 1186 (Idaho

2019) (quoting *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829, 834 (Idaho

2002) (establishing plaintiff has the burden of establishing coverage under a policy to prevail on a bad faith claim even if claim is paid)).

Further, "[a]n insurer does not commit bad faith when it challenges the validity of a 'fairly debatable' claim, or when its delay results from honest mistakes." *Vaught v. Dairyland Ins. Co.*, 956 P.2d 674, 679 (1998) (quoting *White*, 730 P.2d at 1018)). The insured has the burden of showing that the claim was not fairly debatable. *Robinson*, 45 P.3d at 832.

Here, USAA CIC contends summary judgment is warranted on the bad faith claim because 1) there was no breach of the Policy, as USAA CIC has paid all amounts owed to Plaintiffs; and 2) Plaintiffs cannot establish the first, second, and third elements of the prima facie case. (Dkt. 72.)[9] Plaintiffs maintain genuine issues of material fact exist on the elements of the bad faith claim. (Dkt. 77.)

As to USAA CIC's first contention, the Court disagrees. Breach of the insurance Policy is not required to maintain a bad faith claim. *See e.g. Botai v. Safeco Ins. Co.*, 2017 WL 4769430, at *5 (D. Idaho March 22, 2017), *report and recommendation adopted by*, 2017 WL 1383440 (D. Idaho April 12, 2017). Idaho Courts have routinely held that "[a]n implied duty of good faith and fair dealing exists between insurers and insureds in every insurance policy." *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 395 (Idaho, 2010). An independent tort claim for breach of the implied covenant of good

---

[9] USAA CIC further disputes that Plaintiffs can demonstrate the fourth element, but has not moved for summary judgment on that element. (Dkt. 72 at 8, n. 2.)

**MEMORANDUM DECISION AND ORDER - 21**

faith and fair dealing in the context of a first-party insurance action in Idaho, is considered a claim of bad faith. *See Rice v. Union Central Life Ins. Co.*, 2006 WL 3523538 at *6 (D. Idaho Dec. 6, 2006) (referring to plaintiff's claim for breach of the implied covenant of good faith and fair dealing as a bad faith claim); *ABK, LLC*, 454 P.3d at 1186 ("A plaintiff has an independent action in tort when this duty is breached which this Court recognizes as the tort of bad faith."); *White*, 730 P.2d at 1020 ("The tort of bad faith breach of insurance contract then, has its foundations in the common law covenant of good faith and fair dealing….").

What is required to sustain a bad faith claim is "that there must be coverage of the claim under the policy." *ABK, LLC*, 454 P.3d at 1186 (quoting *Robinson*, 45 P.3d at 834 (explaining plaintiff has the burden of establishing coverage under a policy to prevail on a bad faith claim even if the claim is paid)); *see also Botai*, 2017 WL 4769430, at *5, n. 4 (interpreting Idaho caselaw to require that there be coverage under the insurance policy in the first instance to sustain a bad faith claim). Here, there is no dispute that coverage existed. (Dkt. 81 at 4, n. 2) ("Coverage was never in dispute.") Thus, an implied duty of good faith and fair dealing existed between the parties which gives rise to a bad faith tort claim independent from the breach of contract claim.

As to the elements of the prima facie case, the Court finds genuine issues of material fact have been shown preventing summary judgment on the bad faith claim.

### i.   Intentional or Unreasonable Denial or Delay in Payment

USAA CIC argues it did not deny payment of benefits but, rather, that it timely paid a total of $141,057.95 on the claim. Further, USAA CIC contends that it did not

**MEMORANDUM DECISION AND ORDER - 22**

delay payment, as it timely paid twelve months of lost rent, the septic invoice in full, and the appraisal award, all as required under the Policy. (Dkt. 72 at 8-9.)

Plaintiffs, on the other hand, argue USAA CIC denied and delayed payment of the claim without justification by: 1) requiring Plaintiffs to request the lost rental payment each month despite the fact that USAA CIC knew the property was uninhabitable; 2) failing to reissue the March 12, 2019 check; and 3) denying or delaying payments of undisputed amounts which it knew were due, such as the DMA Revised Estimate, the Disaster Pro Estimate, and the JS Held Appraisal. (Dkt. 77 at 15-17.)

The Court finds a genuine issue of material fact has been shown as to whether USAA CIC intentionally or unreasonably delayed or denied payments due under the Policy. As discussed above in addressing the breach of contract claim, Boyle testified in her deposition that she knew Plaintiffs were owed the amount of the March 12, 2019 check, yet she failed to reissue the check after receiving the updated mortgage information. Similarly, there are questions of fact as to whether the estimates received from DMA, Restoration North, and Disaster Pro were undisputed, and whether USAA CIC unreasonably denied or delayed payment of the estimates, given the initial confusion surrounding the fact that the bids did not contain both the construction costs and asbestos abatement costs.

### ii.    Fairly Debatable

There is also a genuine dispute as to whether Plaintiffs' claim was fairly debatable. "Fairly debatable means that there was a reasonable dispute or legitimate question over the eligibility, amount or value of the claim." *Cedillo v. Farmers Ins. Co*., 408 P.3d 886,

MEMORANDUM DECISION AND ORDER  - 23

892 (Idaho 2017). "An insurer does not act in bad faith if it challenges the validity of a 'fairly debatable' claim." *McGilvray v. Farmers New World Life Ins. Co*., 28 P.3d 380, 386 (Idaho 2001) (citations omitted); *see also Vaught*, 956 P.2d at 679. "When a claim is fairly debatable, the insurer is entitled to dispute the claim and will not be deemed liable for failure to pay the claim." *Id*. (citations omitted).

USAA CIC argues Plaintiffs have failed to show the claim was not fairly debatable given the wide-ranging estimates provided by DMA, Restoration North, Disaster Pro, and JS Held. (Dkt. 72 at 9-14.)

Plaintiffs contend the claim was not fairly debatable because the estimates from USAA CIC's own adjusters and appraisers were uncontradicted. (Dkt. 77 at 15-17.) Plaintiffs maintain USAA CIC failed to issue payments on the undisputed amounts as they became due and, instead, acted in bad faith by offering a settlement with strings attached, and delayed payment when it knew the property was uninhabitable, unable to be rented, and Plaintiffs were under great financial stress.

The Court finds genuine issues of material fact have been shown as to whether the claim was fairly debatable. While true that there were varying estimates for the construction costs and asbestos abatement, Plaintiffs have pointed to evidence upon which a jury could find that portions of the claim were not debatable. For instance, Boyle testified in her deposition that Plaintiffs were at least owed the amount of the DMA Initial Estimate for construction costs. (Dkt. 69, Boyle Depo. at 61:15-23.) USAA CIC issued a check for the amount of the DMA Initial Estimate on March 12, 2019, but failed to reissue the check after being provide the name of the new mortgage lender. Similarly,

MEMORANDUM DECISION AND ORDER  - 24

Boyle testified in her deposition that in June of 2019, "[USAA CIC] owed the net claim amount unless of course the other check was still pending." (Dkt. 69, Boyle Depo. at 70:10-11.) Yet, the check was never reissued, which Boyle arguably knew based on her testimony that a new check was not issued because USAA CIC was still investigating the mitigation cost and to avoid burdening the insured by sending multiple payments to the mortgage company. (Dkt. 69, Boyle Depo. at 70:12-20.) This evidence gives rise to a genuine issue of material fact as to whether USAA CIC failed to pay an undisputed amount due to Plaintiffs.

Regardless of USAA CIC's stated reasons for not issuing payments, the Court finds Plaintiffs have identified evidence from which a reasonable jury could find certain of the estimates or other amounts were undisputed and should have been paid. For instance, the jury could conclude that the estimates from DMA were not disparate from that of Restoration North, and therefore undisputed, because the estimates related to different costs – construction and asbestos abatement. Particularly when coupled with Boyle's deposition testimony that USAA CIC had no information to contradict Restoration North's estimate for asbestos mitigation in May of 2019. (Dkt. 78, SOF at ¶¶ 27, 37.) On the other hand, the jury could find Boyle's explanation for conducting a further investigation into the amount of the claim was reasonable or the result of an honest mistake and, therefore, find that the claim was fairly debatable.

Further, there are genuine issues of material fact concerning whether USAA CIC's settlement offer is evidence of bad faith. On this point, Plaintiff relies on *Chester v. State Farm Ins. Co.*, 789 P.2d 534, 537 (Idaho Ct. App. 1990). (Dkt. 77 at 15-16.) *Chester* does

not stand for the proposition that a conditional settlement offer alone constitutes bad faith as a matter of law. *Franco v. State Farm Mutual Auto. Ins. Co.*, 2018 WL 3745816, at *7 (D. Idaho Aug. 7, 2018).

Rather, in *Chester*, the Idaho Court of Appeals identified the insurer's settlement offer as one piece of the evidence supporting the jury's verdict finding bad faith based on delayed payment of undisputed claims. The court observed that it was unclear whether the insurer's settlement offer as to undisputed amounts was made without strings attached, or whether acceptance of the offer would have precluded the insured from suing for the disputed amounts.

Here, as discussed above, there are genuine issues of material fact as to whether the construction costs and asbestos mitigation were fairly debatable or disputed claims. Thus, whether USAA CIC's January 7, 2020 email offering of a settlement amount was a conditional offer with strings attached or, more specifically, is evidence of bad faith, is disputed. The January 7, 2020 email offering is one piece of evidence that must be weighed and considered by the trier of fact in the context of all of the evidence to determine whether USAA CIC acted in bad faith.

### iii.   Good Faith Mistake

USAA CIC maintains Plaintiffs cannot show any delay in payment was not the result of a good faith mistake, because there was no delay in payment. (Dkt. 72 at 15.) Rather, USAA CIC maintains it complied with the terms of the Policy and timely issued payment in accordance with the provisions of the Policy.

**MEMORANDUM DECISION AND ORDER  - 26**

The Court finds questions of fact have been shown on this element. As discussed above, Plaintiffs have identified evidence upon which a reasonable jury could find USAA CIC unreasonably denied or delayed payment, and the absence of a good faith mistake. For instance, Boyle's testimony that Plaintiffs were entitled to the amount of the initial DMA estimate, but that she nonetheless did not reissue the check after receiving the updated mortgage information. Likewise, Plaintiffs point to evidence demonstrating Boyle was aware there was asbestos in the home as early as April 2019, but that USAA CIC did not pay Restoration North's bid for asbestos mediation and did not begin investigating the cost to mediate the asbestos until June 2019. While USAA CIC offers countering explanations, the Court finds Plaintiffs have identified evidence upon which a jury could find USAA CIC's denial or delay in payment was not based on an honest, good faith mistake.

Based on the foregoing, the Court will deny USAA CIC's motion for summary judgment as to Plaintiffs' bad faith claim.

### C.    Intentional Infliction of Emotional Distress Claim

"In order to establish a claim of intentional infliction of emotional distress, the plaintiff must prove that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress was severe." *Berian v. Berberian*, 483 P.3d 937, 950 (Idaho 2020) (quoting *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2016)).

MEMORANDUM DECISION AND ORDER  - 27

As to the second element, "[c]ourts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." *Id.* (quoting *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 387, 741 (Idaho 2003)). "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Id.* at 950-951. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable [minds] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Id.* at 950 (quoting *Edmondson*, 75 P.3d at 741) (quoting Restatement (Second) of Torts § 46 cmt. h (1965))).

Here, USAA CIC asserts Plaintiffs have failed to establish that it engaged in extreme and outrageous conduct. (Dkt. 72 at 15-16.) Pointing primarily to Boyle's declaration, USAA CIC argues it timely paid the amount owed under the Policy, and that Boyle was responsive and prompt in processing the claim.

Relying on the arguments related to the bad faith claim, the motion to add a claim for punitive damages, and Mr. Lambirth's declaration, Plaintiffs maintain they have suffered emotional distress caused by USAA CIC's "intentional, extreme, and outrageous" conduct. (Dkt. 77 at 17-18.) Plaintiffs contend USAA CIC knew of their financial constraints and inability to pay the mortgage on the property while the property

was uninhabitable, but, nonetheless, USAA CIC delayed and denied payment of benefits due under the Policy.

Having carefully reviewed the submissions of the parties, the Court finds Plaintiffs have failed to identify evidence upon which a jury could find that USAA CIC engaged in extreme or outrageous conduct necessary to sustain their claim. *See Berian*, 483 P.3d at 950. The conduct complained of by Plaintiffs simply does not rise to the level of "'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Id.* at 950-51. Particularly when viewed in comparison to the kinds of conduct that courts have deemed sufficiently extreme and outrageous. *Id.* at 951 (identifying cases as examples of such conduct).

Here, the alleged offending conduct was that USAA CIC delayed and refused to investigate and pay the claim, which resulted in Plaintiffs being late on mortgage payments, incurring late fees, being unable to rent or repair the property, and exhausting the limit of their mortgage payment protection. (Dkt. 4-2 at ¶ 59.) The conduct occurred during the span of approximately a year, before Plaintiffs filed this lawsuit.

While Plaintiffs may have experienced difficult circumstances during the time that the Policy claim was unresolved, they have not identified conduct by USAA CIC that constitutes extreme or outrageous conduct. The offending conduct alleged by Plaintiffs was, at most, unreasonable or, perhaps, insensitive to Plaintiffs' circumstances. However, the conduct complained of does not rise to the level of extreme or outrageous conduct of the kind required to sustain this cause of action. *See e.g. Walston v. Monumental Life Ins. Co.*, 923 P.2d 456, 465 (Idaho 1996) (insurance company's unfair dealings with a

grieving widower). Accordingly, the Court will grant the motion for summary judgment on the intentional infliction of emotional distress claim.

**2.      Motion to Add a Claim for Punitive Damages**

Plaintiffs seek leave to file an amended complaint to add a claim for punitive damages against USAA CIC. (Dkt. 58, 80.) Plaintiffs' arguments on this motion mirror and incorporate the arguments made in the summary judgment briefing – that USAA CIC unreasonably denied and delayed payment of undisputed amounts as they became due contrary to Idaho law and industry standards. (Dkt. 59, 79.) USAA CIC opposes the motion arguing the unpaid portions of the claim were disputed and, further, that Plaintiffs cannot show USAA CIC's conduct and state of mind rose to the level required to sustain a claim for punitive damages. (Dkt. 74.)

**A.      Legal Standard**

Idaho Code Section 6-1604 governs requests to add a claim for punitive damages. *Windsor v. Guarantee Tr. Life Ins. Co.*, 684 F.Supp. 630, 633 (D. Idaho 1988). The statute sets forth the requirements for such a claim at the pleading stage and the trial stage.

At the pleading stage, such as here, the statute prohibits plaintiffs from claiming punitive damages in their initial complaints. Idaho Code § 6-1604(2). Instead, plaintiffs must file a pretrial motion requesting to amend the pleadings to include a prayer for relief seeking punitive damages. The Court, in turn, should permit such amendment only if, "after weighing the evidence presented, the court concludes that, the moving party has

established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." Idaho Code § 6-1604(2).

At the trial stage, to succeed on a claim for punitive damages, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6-1604(1). "The determination of whether a party should be permitted to assert a claim for punitive damages is not based upon the type of case or claim [but instead]…revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC*, 191 P.3d 196, 201 (Idaho 2008) (citing *Myers v. Workmen's Auto. Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004)).

A bad act exists where "the defendant 'acted in a manner that was an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.'" *Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 178 P.3d 606, 615 (Idaho 2008) (quoting *Myers*, 95 P.3d at 985)). A bad state of mind is "'an extremely harmful state of mind, whether that be termed malice, oppression, fraud or gross negligence; malice, oppression, wantonness; or simply deliberate or willful.'" *Id*. Thus, to support an award of punitive damages, the movant must prove the opposing party's actions constituted an extreme deviation from standards of reasonable conduct, which was done with knowledge of the likely consequences and an extremely harmful state of mind. *Id*.

**MEMORANDUM DECISION AND ORDER - 31**

In determining whether to allow a claim for punitive damages, the Court views the evidence and draws inferences in the light most favorable to the movant, without assessing credibility or resolving factual disputes, and asks whether a reasonable jury could award punitive damages. *See Myles Davis, et al. v. Blast Properties, Inc., et al.*, 2023 WL 1767311, at *3-6 (D. Idaho Feb. 3, 2023) (defining the "Rule 50" approach); *Cleaver v. Transnation Title & Escrow, Inc.*, 2023 WL 1785541, at *3 (D. Idaho Feb. 3, 2023) (applying the standard for Rule 50 motions).[10] Where the movant demonstrates that a reasonable jury could find clear and convincing evidence supporting an award of punitive damages, the Court will allow the movant to seek punitive damages. *Id.*

Applying these principles here, the Court is mindful that in Idaho, "punitive damages are not favored in the law and should be awarded only in the most unusual and compelling circumstances." *Seiniger*, 178 P.3d at 614 (citing *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992)). The ultimate determination of whether to allow a plaintiff to amend the complaint and whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *Id.* at 615.

---

[10] The Idaho Supreme Court recently accepted a certified question from this District regarding the proper approach for evaluating a pre-trial motion to add a claim for punitive damages. *Davis v. Blast Properties*, 2023 WL 1767311, at *3-6. It is unknown when the Idaho Supreme Court will decide the certified question. To avoid delay, the Court will decide the motion before it in this case by applying the Rule 50 approach consistent with the reasoning in *Davis v. Blast Properties*, but will entertain a motion to reconsider, if necessary, following a ruling from the Idaho Supreme Court.

**MEMORANDUM DECISION AND ORDER - 32**

### B.     Analysis

Here, Plaintiffs argue USAA CIC engaged in extreme and outrageous conduct warranting punitive damages. Plaintiffs rely on their retained insurance expert, Elliott S. Flood, to demonstrate that USAA CIC's conduct in delaying and denying payment of the Policy claim was an "egregious deviation" of insurance industry standards, and amounted to oppressive and outrageous conduct in the adjustment of the insurance claim. (Dkts. 59, 62, 79.) In particular, Plaintiffs point to USAA CIC's refusal to pay undisputed amounts as they became due contrary to Idaho law, requiring Plaintiffs to ask for lost rental payments each month when USAA CIC knew the house was uninhabitable, refusing to provide the Disaster Pro estimate to Plaintiffs, and making an offer "with strings attached." Plaintiffs argue that rather than pay undisputed amounts, USAA CIC attempted to use the benefits due as a tool to leverage a settlement of the claim at a time when USAA CIC knew Plaintiffs were particularly vulnerable due to their financial constraints, family circumstances, the uninhabitability of the property, and the end of the twelve months of lost rental income due under the Policy. (Dkt. 59, 79); (Dkt. 76, Amend. Dec. Hunter Lambirth) (describing Plaintiffs' circumstances during the time the Policy claim was unresolved).

USAA CIC contends Plaintiffs have not demonstrated a reasonable likelihood of showing the requisite bad acts and bad state of mind, because it timely paid what was owed under the Policy, and handled the claim in good faith and in accordance with industry standards. (Dkt. 74.) Further, USAA CIC asserts that portions of Plaintiffs' Policy claim were reasonably disputed and that Plaintiffs cannot establish USAA CIC

engaged in oppressive behavior with a harmful state of mind as required to seek punitive damages. In support of its position, USAA CIC has provided an expert report from Gary L. Cooper and an excerpt from the deposition of Carlos Cabrera. (Dkt. 74-1, 74-2.)

The Idaho Supreme Court has identified five factors relevant to determining whether there is sufficient evidence to support a punitive damages award:

1.   the presence of expert testimony;
2.   whether the unreasonable conduct actually caused harm to the plaintiff;
3.   whether there is a special relationship between the parties, as in the ... insured-insurer relationship;
4.   proof of a continuing course of oppressive conduct; and
5.   proof of the actor's knowledge of the likely consequences of the conduct.

*Cuddy Mountain Concrete Inc. v. Citadel Const., Inc.*, 824 P.2d 151, 160-61 (Idaho Ct. App. 1992). No one factor is determinative, nor are Plaintiffs required to establish the presence of all five factors.

With the aforementioned legal standard and the relevant factors in mind, and having carefully reviewed the parties' submissions and the entire record, the Court finds Plaintiffs have failed to establish a reasonable likelihood of showing USAA CIC engaged in conduct that was an extreme deviation from reasonable standards, and acted with an extremely harmful state of mind during the adjustment and appraisal of the insurance claim. *Hall v. Farmers Alliance Mut. Insur. Co.*, 179 P.3d 276, 282 (Idaho 2007).

The first two factors do not favor either party, as both parties offer competing expert reports and disputed evidence concerning the reasonableness of USAA CIC's conduct in handling the claim. Plaintiffs allege they have suffered actual harm caused by USAA CIC's unreasonable conduct, in the form of late fees, lost use of the property, and

**MEMORANDUM DECISION AND ORDER  - 34**

other consequential damages. (Dkt. 59 at 17-18.) USAA CIC maintains Plaintiffs cannot establish that it engaged in any unreasonable conduct. For the reasons discussed previously, whether USAA CIC's conduct was unreasonable is highly contested, with conflicting evidence on both sides.

The special relationship factor is easily established and uncontested, as the parties were in a special relationship as insurer and insured. *Cuddy*, 824 P.2d at 160-61; (Dkt. 74 at 19.) This factor therefore supports Plaintiffs' motion, but is not determinative.

As to the fourth factor - a continuing course of oppressive conduct - Plaintiffs rely on Flood's report and a statement by Boyle during her deposition explaining the reason for not issuing a payment in the amount of the lower estimate for asbestos repair. (Dkt. 59 at 19-20); (Dkt. 79 at 6) (citing Dkt. 69, Boyle Depo. at 84:11-23.) Even viewed in the light most favorable to Plaintiffs, this evidence is insufficient to support a jury's finding that USAA CIC engaged in a continuing course of oppressive conduct. While this evidence goes to the very core of the bad faith claim and the dispute between the parties as to whether USAA CIC's handling of the Policy claim was reasonable, it does not establish that USAA CIC engaged in the kind of extreme bad acts required for an award of punitive damages.

Similarly, the evidence offered to show the fifth factor - knowledge of the likely consequences of the conduct – may establish a claim for bad faith, but it does not prove the existence of a bad act or bad state of mind, standing along, much less in tandem as required to support an award of punitive damages. Plaintiffs point to Boyle's testimony that she knew the insured would suffer a financial impact and other consequences if the

**MEMORANDUM DECISION AND ORDER - 35**

claim was not timely paid. (Dkt. 59 at 20); (Dkt. 79 at 6-7) (citing Dkt. 69, Boyle Depo. at 17:12-25, 18:1-2.) Boyle's general acknowledgment that delays in resolving a policy claim would have a financial impact and be frustrating to Plaintiffs, as it would be for any insured, does not establish that USAA CIC engaged in bad acts with a bad state of mind in handling Plaintiffs' claim that would support an award of punitive damages.

The facts and evidence Plaintiffs' rely on establish bad acts and bad state of mind simply do not rise to an extreme deviation from reasonable standards of conduct in the insurance industry or the requisite extremely harmful state of mind needed to pursue a claim for punitive damages. *Seiniger*, 178 P.3d at 615. Plaintiffs' contentions may prove to be sufficient to show USAA CIC acted unreasonably or even in bad faith, as discussed above. This, however, does not equate to establishing that USAA CIC's handling of the claim constituted an extreme deviation from reasonable standards of conduct or was done with an extremely harmful state of mind.

For these reasons, the Court finds Plaintiffs have not established a reasonable likelihood that a jury would find USAA CIC's actions or state of mind rise to the level required to allow a claim for punitive damages. *Strong*, 393 F.Supp.2d at 1026 (Plaintiff did not established reasonable likelihood of proving "the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards'" because of conflicting evidence.). Accordingly, Plaintiffs' motion to add a claim for punitive damages will be denied. However, if the evidence at trial is sufficient for a jury to find, by clear and convincing evidence, that USAA CIC committed bad acts and with the requisite bad state of mind, Plaintiffs may, at that time, seek leave to submit the issue to the jury. *See Roost*

MEMORANDUM DECISION AND ORDER - 36

*Project, LLC v. Anderson Construction Co.*, 2020 WL 3895757, at *4-5 (D. Idaho July 10, 2020). "Whether such a request is granted, however, is subject to the Court's discretion and not decided here." *Id.* (citing *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992) (Whether to submit punitive damages to the jury rests within the sound discretion of the trial court.)). Consequently, Plaintiffs may not reference punitive damages during voir dire or in its opening statement during trial.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1)   Plaintiffs' Motion to Amended Complaint to Include a Claim for Punitive Damages (Dkt. 58, 80) is **DENIED**.

2)   Defendant's Motion for Summary Judgment (Dkt. 72) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the claims for breach of contract and intentional infliction of emotional distress. The motion is denied as to the claim for bad faith.

IT IS FURTHER ORDERED that a telephonic status conference is scheduled for **April 27, 2023, at 10:00 a.m. (MT).** The parties are directed to confer in advance of the conference and be prepared to advise the Court as to how they intend to proceed in this matter.

DATED: April 3, 2023

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 37**